Judge McEwen, may it please the Court, Joelle Alise on behalf of the GEO Group, I'd like to reserve five minutes of my time for rebuttal, if I may. Your Honors, the confidential financial information sought by the State in this case has no relevance to any recognized theory of unjust enrichment under Washington law. Just as in Hartley, Sanderson, and Lombardi, mandamus relief is justified here to prevent the compelled disclosure of confidential, sensitive, but irrelevant information. The District Court's discovery orders below are clearly erroneous as a matter of law, and therefore satisfy the third bounding factor for mandamus relief. Does your client concede that Washington's minimum wage law applies to it? No, Your Honor, and that is the subject of proceedings in the District Court currently. Don't we have the cart before the horse? I'm sorry, I'm not sure I understand, Your Honor. Well, you're asking us to control discovery in a case that resolves or revolves around whether this minimum wage law applies to your client in operating these privately held detention facilities, and as I understand your response, you dispute that. Well, Your Honor, there are two separate claims below. There's the minimum wage claim, and there's the unjust enrichment claim. The discovery sought by the State here only goes to the unjust enrichment claim. They have not said, and they don't argue, that it's relevant to the minimum wage claim. And so we're trying to ensure that the confidential financial information is not disclosed as to the unjust enrichment claim, since that's the only claim where that could possibly be. Has it been determined that only the market value of services and not profits and some other measure are the actual measure for unjust enrichment? Your Honor, our argument is that the reasonable value of services is the only proper remedy under Washington law, but the State disputes— Has it been determined what is the precise range of remedies under unjust enrichment in your case? The dollar amounts, Your Honor? No, the principles under which they can be determined. Maybe I'm not being clear, but it's just the same question that Judge Hawkins asked, but as applied to unjust enrichment. Has there been a court determination as to what the measurements would be available for determining unjust enrichment? Your Honor, under Washington law, our argument is that only the reasonable value of services would be the proper remedy, and the way to measure that would be the market value of those services. But no, the court hasn't said, I am going to only look at market value. The district court below? Yes. No, Your Honor. I mean, it's the same sort of cart before the horse. You can get the discovery, you can put it under seal, it can be limited, and then its admissibility is a whole other question. Well, Your Honor, this Court said in Hartley that there are necessary and ultimate limitations on the discovery of information based on relevance, and this case is very much like Hartley in that sense. And our point is that there must be limitations at the discovery stage as to what can be disclosed to the State. Let me tell you exactly where I'm coming from. Thank you, Your Honor. If it had been determined, A, that the minimum wage laws of the State of Washington apply to your client's business, then I could perfectly understand your argument that why are we talking about anything other than the difference between, A, what we pay the detainees when they choose to work, and, B, what Washington minimum wage law requires. That's where I'm coming from. If we were there on that, I would have some sympathy with your argument about discovery. But, Your Honor, even as to the unjust enrichment claim, the State still has to show that the information it is seeking is relevant to the remedy and to liability for unjust enrichment on that claim considered on its own, because it doesn't claim that any of that is relevant to minimum wage. So what evidence, what requests for discovery are you specifically objecting to? There are seven requests. They're listed at A-9 through A-10 of our addendum, and those are the requests that the district court allowed to move forward. Are these the ones that are listed in the district court's order of October 2018? This is interrogatory number seven, the ones where he's done the red line? That's correct, Your Honor. So there are seven of them. And you object to all of these? Yes, Your Honor, all seven of them. Okay. There's one in particular here that concerns me, and that would be the request for production number 51, which goes to the offers and bids question. Everything else looks like it might be fair game. Your Honor, I respectfully disagree, and I think that the unjust enrichment claim under Washington law put forward by the State both misconceives the liability question and the remedy question under Washington law, and therefore the information they requested is relevant on both counts. As to liability, the proper question of liability for unjust enrichment under Washington law is whether the State, as the plaintiff in this case, conferred a benefit on the GO group. And as to that question, there's no dispute between the parties that the confidential information sought by the State is irrelevant. The Court of Appeals of Washington, Elias v. Schroeder, squarely rejected the theory of liability put forward by the State here. In Elias, the Court of Appeals held that the plaintiff in the minimum wage — I'm sorry, in the unjust enrichment case must be the one who conferred the benefit on the defendant. It specifically rejected the argument that the plaintiff can recover for a benefit ostensibly conferred on the defendant by someone else. But that's what the State seeks to do here. I'm sorry to interrupt you. Did your client move for partial summary judgment on the unjust enrichment claim? Not before these discovery requests, Your Honor. We had moved to dismiss the unjust enrichment claim offering the very argument that I just put forward, the liability argument. Didn't move for summary judgment on that theory alone? On that theory alone, I don't believe we have, no, Your Honor. And that motion to dismiss was denied? Yes, Your Honor. That was — So here's just kind of a procedural twist that you can help me explain. If the motion to dismiss is denied and the motion is based on the theory — and you may be right — filing a mandamus, isn't that just a backward or a roundabout way to get back to what the motion to dismiss already denied you? No, Your Honor. What we're asking for in terms of relief is simply the vacater of the district court's discovery orders. Now, because the State contends that the discovery it seeks is relevant to liability, because it has put that in issue, that necessarily requires this Court to compare, was the theory of liability of unjust enrichment recognized under Washington law? And how does that compare to the discovery they're seeking? Well, I don't think I quite have your answer as tied to the motion to dismiss. Your motion to dismiss has been denied, correct? Yes, Your Honor. And that's based on a theory of liability or a theory of unjust enrichment, correct? That's correct, Your Honor. Did you seek certification on that? No, Your Honor. We did not seek certification on the motion to dismiss. So my concern is this, that if the — I don't know if the Court was right or wrong on that. We're not making a judgment. But the Court denies a motion to dismiss based on a legal principle, but now you're asking us, in effect, to decide the legal principle in advance to limit discovery, which is even further afield because were we here on a motion to dismiss, we'd be here on de novo review. But we're here on Bauman, we're on discovery. Discovery tends to be discretionary. So I'm kind of seeing . . . I understand why you've made your request, but I just see these two procedural aspects kind of colliding, and that if we were to rule in your favor, we've just done an end run around the motion to dismiss. And Your Honor, again, to respond to that point, we would not be arguing the question of how to properly determine liability for unjust enrichment under Washington law if the State were not here asserting that the discovery it's requesting is relevant to liability. That is what's put this in issue. We didn't come to this Court on a petition of mandamus trying an end run around the motion to dismiss. It's only because the State is putting forward liability as the basis, as one of the bases for the discovery, that we now are in a position of arguing that their theory of liability is simply not recognized by Washington law, pursuant to Elias v. Schroeder, which rejected the idea that a State can recover based on a benefit ostensibly conferred by someone else. That's what the State's doing here. It's trying to take advantage of a benefit ostensibly conferred on the GEO by the detainees, who by the way are seeking their own monetary relief in their own separate lawsuit below. And most extraordinary of all, Your Honors, the State has made clear that it doesn't believe it is the representative of these detainees and does not have any obligation to share any monetary recovery with the detainees, opening the way to a double recovery. So right now, what's happening in the District Court? Right now, the District Court very recently ordered a summary judgment briefing based on a statement of interest submitted by the United States Department of Justice last week and asserting intergovernmental immunity on behalf of GEO, because in the words of the Department of Justice, this is an aggressive lawsuit attempting to flout the Federal Government's ability to enforce immigration law. And that goes to the extraordinary – I'm sorry, Your Honor. We're not here to argue the merits of the government's intervention, but is other discovery proceeding? In this case, no. There's one remaining deposition, Your Honor. So basically, all of this is held up pending coming up here? That's correct, Your Honor. And so the State, in the proceeding below on May 28th, stated, quote, there is no obligation on behalf of the State to compensate detainee workers. Because the State does not represent the detainee workers, it has no obligation to the detainee workers, and our interests are not aligned with the detainee workers. That's on pages A-126 and A-130 of our proposed supplemental addendum, Your Honors. And it underscores the fundamental incompatibility between the State's theory of unjust enrichment on liability and what Washington law recognizes as liability for unjust enrichment. Because Washington law is squarely focused on compensating the individual, the plaintiff, who ostensibly conferred the benefit on the defendant, not some third party who's coming in sweeping in to disgorge profits in their words. So, Counsel, what – there is a protective order here issued by the District Court, is that correct? That's correct, Your Honor. Okay. And what's inadequate in the protective order? Well, Your Honor, what's inadequate is that Washington law makes this protective order insufficient protection. The Lyft case from the Washington Supreme Court squarely held in circumstances very analogous to these, Your Honor, that where trade secrets are turned over to a State agency pursuant to a confidentiality order, even within the terms of a – within the confines of a mediation, that trade secret is nonetheless mandatorily disclosed under the public record act for Washington State unless the objecting party can show irreparable harm and that it would be clearly contrary to the public interest. So Your Honor, if we were to turn over our trade secrets to the State, in short order, we would find ourselves in Washington State court with the burden of showing why those trade secrets should not be made public. And that is enough of a harm to justify mandamus relief under the second bound and factor. And as – and I've already covered liability, Your Honors, as to why what they're asking for is not relevant to liability under Washington law. I'd like to quickly touch on the remedy portion and just make the point that the Washington Supreme Court in Kerr v. King County, this Court in Metrophone v. Global Crossing, the restatement of restitution and the model jury instructions all point in the same direction. Where the benefit conferred is in the form of services to a business, the proper remedy under Washington law is the reasonable value of those services. Discouragement of profits is only permitted where there is proof of conscious wrongdoing on the part of the defendant. There's no such allegation here, nor could there be, since the State doesn't dispute that GEO is authorized by the federal government to pay $1 a day to the detainees. So you're left with the reasonable value of services being the remedy. And the State does not dispute that as to that remedy, the confidential information it seeks is irrelevant. Now the State cites the Young case, but the Young case has nothing to do with discouragement of profits. It has to do with the reasonable value of improvements to land, which is a completely different remedy under Washington law. And just to highlight that, they're not seeking the value of, the State is not coming forward in saying that the detainees improve the value of the land on which the Northwest Detention Center sits. Do you want to save remaining time? Yes, Your Honor. Thank you. I'll save the remainder of my time for rebuttal. Good morning, Your Honors. May it please the Court. I'm Andrea Brennecke, representing the State of Washington. As our Supreme Court has noted, issuing a writ of mandamus against a judge is a drastic remedy and is appropriate only in extraordinary circumstances, none of which exist here. GEO does not meet four of the five Bauman factors needed to justify mandamus of the routine discovery order before the Court. And my argument will focus primarily on the first two. The trial court did not make a clear error of law in its discovery ruling compelling production of GEO's financial documents because that information is relevant to Washington's unjust enrichment claim, both liability and remedies. And we are talking about routine financial records, such as the Northwest Detention Center budgets and financial reports that contain both labor and overtime expenses, as well as GEO's own calculation of what it would cost to pay detainee workers the minimum wage. Okay. Would you turn to paragraph, to request for production number 51? I have that, Your Honor. That's the financial performance analyses, financial models, other financial evaluations for the purposes of GEO groups, offers and bids. Yes, Your Honor. From 2005 to the present. That seems to me to be beyond, it's different from anything else on the list that the district court addressed. And it does seem to go to one of the questions that GEO focused on, which was that the exposure of this stuff is disclosure to their competitors in future bids, whether it's in Washington or someplace else. You may yet drive them out of the state. But it is relevant to their financial, to their ability to bid on other projects elsewhere. So why is that critical to your case? Right. Your Honor, the underlying, the underlying model of how GEO has designed its operations includes leveraging relatively few paid GEO staff to supervise a relatively large number of detainee workers who are paid a dollar a day. It is, when issuing the discovery, we sought both the basic information, as you've identified about their budgets and other things that you're finding non-concerning, but also the underlying bids and information about how they came up with their per diem fully burdened rate, which is how they get paid in this case. In order to follow the money and how they profit from the detainee labor, which is part of what we are attempting to show, the financial benefit to GEO of this work, we need to understand how it is that they get paid. And it's in those bids. If your remedy, your remedy is that you're seeking our profits. Is that correct? So, Your Honor, under Young v. Young, there are two alternative remedies for unjust enrichment. And we are seeking to put, to discover evidence and put forth evidence of both of them. And that is what? Okay. So the first is what is effectively the fair market value of the labor, okay, what GEO would have to pay someone else in order to do that, what they would have had to pay Tacoma workers to do that. The second is what is the full benefit or advantage to the defendant from having engaged, having had the benefit. Is that different from profits? In this case, Your Honor, because it's a In light of the Washington law? In light of the Washington law, and in light that this is a for-profit corporation where we're seeking monetary award, profits is inherently part of that analysis. We are entitled to see how it is that they have profited or benefited financially from the model that they have chosen. Do you agree that under the Washington public disclosure law that this information would be subject to disclosure, absent a proceeding in which they were to show a compelling reason why it shouldn't be? Your Honor, there are a couple aspects of this. First of all, there is a protective order in place which gives, that the court has entered, which requires us to provide any notice to GEO of any kind of request for records. And we would certainly do that. We would never release these records absent either their. I understand that. Yeah. I'm just asking you if there's a request. Yes. Because now this is all public, that they might have to turn over all this information. If there's a request, under Washington public disclosure law, the burden's on them to show why it shouldn't be released. Is that right? Well, and Your Honor, of course, the court, yes, no, well, there's an exemption. I wanted to try to address your question directly. There's a public records act controversy exemption, which addresses specifically the situation where records are relevant, as they are here, to a controversy the agency's involved in. But if they were developed in discovery, they're not part of a public, they're not considered public records. So while that issue, while I cannot say that issue may not have to be litigated in the future. But I am pretty familiar with the Washington law, and I know, you know, of course there's the description of confidential financial trade secret information, but the controversy requirement seems to me to not necessarily be applicable here, that they would be able to invoke that and then keep it confidential. So I mean, the concern is this, is that in a normal situation between two private litigants, one would say the, you know, quit belly aching, the protective order takes care of it. Here you have a different situation. So why shouldn't that figure into the calculus? Well, Your Honor, I would say that here we do have the controversy exemption, and with due respect, we believe that applies, and it would exempt these from public disclosure. I would also address that. Is that a representation you're making to the court, that these documents would not be turned over under a request under the PRA? Your Honor, the state is required to follow the public records act, and if a court were to order them to be turned over, as you know, we would need to comply with a court order. But the agency can take a position as to whether the documents can be turned over or not. Correct. And our position would be that the controversy exemption applies. It's very important for us to be able to engage in this. And so these documents are exempt from release under Washington's PRA. That's our position. In your agency's view. Yes. That would be our, that's our position. Yes, indeed. I also want to say that in terms of the harm, GEO has claimed that they would have harm simply by turning over these records, but in fact, they've already turned over records in some respects in each of the categories of the court's order. And to your point, they have specifically turned over the bid that gave rise to the 2015 contract with ICE. So to the extent GEO is claiming they cannot unring a bell once it's rung, that bell has been rung, and no harm has come to GEO, and no harm will come to GEO. But that information could be returned, if we thought that that was inappropriate. It could be returned to GEO, and then you wouldn't have to confront the controversy of a request under the PRA. Theoretically, that's possible. It has also already been integrated in depositions, in expert reports, both ours and theirs. Part of that's part of your record on review. Your Honor, this is a case where not only would there not be harm to GEO in exposing this, but Washington needs these records in order to pursue both its liability and its remedies at trial. For context, I do want to answer some of the issues that the court was asking about. We have indeed faced dispositive motions and cross motions for summary judgment. GEO moved to dismiss the unjust enrichment order denying, and the court entered an order denying that motion, and that order is ECF 288. We have already dealt with the issues of parents patriae and our authority as the state of Washington to bring this law enforcement claim. And what's important here is that the unjust enrichment claim ensures to keep, ensures that GEO does not keep the benefit or the windfall of its past unfair labor practices for having run all of its non-security functions on the back of detainee laborers while paying them only a dollar a day. This is our backward-looking claim as part of our law enforcement. We also have a forward-looking claim, the injunctive relief on the Minimum Wage Act. But both claims are necessary to enforce our laws. And right now, all that's before this court is a simple discovery order. The trial judge has not yet heard any evidence, has not instructed a jury, has not determined what the proper unjust enrichment remedy is based upon the facts of the case. And the full merits review that GEO invites of the discovery order now is both substantively improper under Bauman and procedurally untimely. In the motion to dismiss, and you referenced that maybe parts of these were motions for GEO group asked the court to rule on the scope of unjust enrichment liability and remedies? Your Honor, that specific issue has been touched on. The court has not basically denied the motion for summary judgment. So the court has not entered a substantive analysis of the law. Denial. Correct. Does the state of Washington routinely seek to enforce its minimum wage law by seeking damages for unjust enrichment? Your Honor, I'd say routine enforcement is usually done by the Department of Labor and Industries, and there's an administrative framework for doing that. What happens is, though, at times, the Attorney General's office will enforce the state laws and will do so in a way that looks at those cases that have a broader impact or impact a lot of people. So is the answer to my question yes or no? I'm not aware of other cases that our Attorney General's office has brought specifically seeking unjust enrichment in the Minimum Wage Act or in a fair wage claim. Does this case have broader application than this detention center? Not to detention centers necessarily, but it does for employers who may seek to avoid paying a fair wage to their workers. Well, what else would that be? Any employer that is involved in employing or allowing people to work in this state is required to follow our minimum wage laws, unless there are specific statutory exemptions. Not by the Department, by the section of Labor and Industries. So we have two parts of our enforcement mechanism in the state. We have routine enforcement that happens through the Department of Labor and Industries, but of course, the Attorney General's office brings a wide range of affirmative litigation where there are statutory violations or other violations of Washington's common law. What matters is that people are being harmed. People who are working in the detention center, people who are unemployed in the Tacoma area who otherwise would have received those jobs, and our economy, frankly, because what we do in Washington is to ensure that all employers have the right to equal competition by following similar laws. Is there a correctional facility exemption in Washington for this? Your Honor, our Washington state law exempts certain institutions that are state or county run. We don't have an exemption for private contractors who run detention facilities. That's why this is unusual. No, that's why my question is, is that there is an exemption for the state run facilities that we would normally call correctional facilities, correct? Correct. But there is no exemption for a privately run facility. Correct, Your Honor. Our point is that in order to enforce the important laws that we have regarding our economy and workers' rights in this state, it is important to look at places where for-profit corporations may be taking advantage of people, and that is our assertion of what's happening here. So if GEO had responded to your complaint by offering judgment in the differential properly calculated between the $1 they pay and what state minimum wage requires, you would have refused the offer? Your Honor, GEO has not offered anything, and what I would say is I don't— We get to ask hypothetical questions. Exactly. Let me finish. Okay. Sorry, Your Honor. We get to ask hypothetical questions, and we get to demand an answer. What's your answer? Your Honor, if there's a fair offer for resolution, we would well consider that. The reason I raise that is because at trial we are faced with having to put on evidence of our remedies, and we are pursuing both the fair market value as well as the profit disgorgement. And I'll tell you why it's particularly sensitive, because the fair market value in this case is not readily ascertainable. GEO has failed to maintain any records of the actual hours worked by detainees from 2005 to the present. So in order for us to put on evidence of fair market value, we're missing that essential component of the equation, right, that essential number. So we have had to engage in broad discovery to both look at what they have kept records of, which is how many work details, how many days of work there were, because they use that for billing purposes, but we've also had to build then how many jobs there are, what the shifts are or numbers of hours worked each day in order to build an estimate based upon the best evidence that we have of the hours worked. So while we will put that evidence before the court, and while we would be very happy to receive an offer to fairly compensate workers, it may never be that we can prove that at trial because GEO is also taking shots at that evidence. So like in AirServe, where the defendant failed to produce the financial records and there were unique services, they were unable to prove fair market value and they needed to go to the unjust enrichment measure of damages, which was the disgorgement of profits. We are in a similar situation where we may be able to prove the fair market value, and we will try, and we will be grateful when the court accepts one or both of them and decides sitting in its place of equity, which of those is fair between the parties. This is the piece that I think is really important to recognize, which is we have pled unjust enrichment. We are taking the direction from our state Supreme Court, both as to what the liability is, which shows we have to prove that there is a benefit, and GEO is denying that it receives any benefit from the labor of detainees in any respect when they're doing the cleaning or the food preparation for over 1,500 detainees a day. It's our obligation to show the benefit both for liability purposes and then when we get to remedies, either the fair market value or what percentage of the profits is fairly attributable to that labor. Here we seek simply the discovery necessary in order to prove those points. And Your Honor, thank you very much. My time's up. Thank you. We have some time for rebuttal. Thank you, Your Honors. There's three quick points on rebuttal. First, the state cites the controversy exemption under the Public Records Act. There's a case that squarely addresses that in the Washington Court of Appeals called Department of Transportation v. Mendoza de Sugiyama. That's at 182 WASH Act 588. And it says that even where there's a protective order in place, the Public Records Act overcomes that protective order and requires disclosure notwithstanding the exemption cited by the state. So that is not protection enough. Second, as to Parents Patrie, the state comes up here and says, of course we can rely on the injury that occurred to the detainees to assert our unjust enrichment claim. We're pursuing this as Parents Patrie. That is directly contrary to the Supreme Court's holding in Hawaii v. Standard Oil, Your Honors. That's at 405 U.S. 251, a 1972 case. That was the subject of the MTD, of your motion to dismiss, and I assume we'll be subject to further litigation here before it gets to us. I don't know how we get to reach the Parents Patrie question here on the discovery. Your Honor, again, this is — this goes to the question of liability. Right. But you also had an opportunity to seek certification of some portion of the judge's ruling on the motion to dismiss. And it seems a little backdoor here to come and try and get at the Parents Patrie ruling without seeking certification, and you're doing it under the guise of a mandamus. And, Your Honor, again, I respectfully disagree because we wouldn't even be making this argument if the State were not claiming that this evidence is relevant to liability. It's only because of that that I am here saying that the Court needs to determine what the proper theory of liability is under Washington law in order to determine whether this is relevant. But you might have sought certification of some portion — of all or some portion of the motion to dismiss. You didn't do that. That's right. That's right, Your Honor. I don't think that changes the fact that in order for this Court to make a determination of its relevance, it has to first determine what the proper theory of liability under Washington law is. And the proper theory is that the State itself has to confer the benefit. And as to that question, the State concedes that the information it seeks is irrelevant. So it's irrelevant to liability. The final point I'd like to make here, Your Honors — and I know I'm reaching the end of my time. I would just ask the Court's indulgence if I can go a little bit over since the State did as well. You may. Thank you, Your Honor. The State says that this is just a routine discovery dispute. But, Your Honors, in Hartley, this Court was faced with a very similar situation — the compelled disclosure of trade secrets. And the Court said, even as to an ordinary discovery dispute, where the circumstances are extraordinary enough, mandamus relief is appropriate. Here, Your Honor, the circumstances are extraordinary. The State seeks to impose massive financial liability on an agent of the Federal Government based on an unprecedented theory of unjust enrichment. It is such an extraordinary situation that the U.S. Department of Justice submitted a statement of interest just last week in the case asserting intergovernmental immunity and calling this an aggressive attack on the Federal Government's ability to manage immigration. This is an extraordinary case. The first, second, third, and fifth boundment factors are met here. Mandamus relief is justified, and therefore I would ask the Court respectfully to grant the petition. Thank you. I guess nothing if the Court makes a determination on the government's intervention and makes a substantive determination, nothing would prevent you from asking for reconsideration, correct, on the discovery? I suppose that if the District Court were to agree with the statement submitted by the Department of Justice, that would lead to dismissal of the minimum wage claim, at least, but not unjust enrichment. It is really the focus of most of these. Of these, yes, exactly. This is going to be relevant no matter what happens with the statement of interest that the Department of Justice has submitted specifically, although there is broader summary judgment briefing going on that would implicate the unjust enrichment claim below. Thank you for the clarification. Thank you, Your Honor. Thank all counsel for your argument this morning. The case just argued is submitted and we're adjourned.
judges: Hawkins, McKeown, Bybee